# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MID-CITY PARKING, INC. | ) | Case No. 04 B 45177 |
| | ) | |
| Debtor. | ) | Judge Jacqueline P. Cox |
| | ) | |
| JOSHUA A. ARLOW, as Creditor Trustee | ) | |
| of Mid-City Parking, Inc. | ) | Adversary No. 06 A 01812 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| F.A.Y. PROPERTIES, INC. | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

On December 8, 2004, Mid-City Parking, Inc. (the "Debtor") filed its petition for relief under Chapter 11 of the Bankruptcy Code. On December 7, 2006, Joshua R. Arlow, as creditor trustee (the "Trustee") filed a complaint against F.A.Y. Properties, Inc. ("FAY"). Count I of the complaint alleges that the Debtor made preferential transfers to FAY which are avoidable under 11 U.S.C. § 547. Count II of the complaint alleges that the transfers may be recovered by the Trustee under 11 U.S.C. § 550. Finally, Count III of the complaint asks that any claim of FAY against the bankruptcy estate be disallowed unless and until FAY returns the transfers. The complaint is based on five transfers in the following sums that the Debtor made to FAY during October and November of 2004: Transfer #1 for $15,000; Transfer #2 for $24,840; Transfer #3 for $11,000; Transfer #4 for $11,000; and Transfer #5 for $5,019.30. (Joint List of Stipulated Facts ¶ 2).

The Debtor and FAY have been in business together for more than ten years. Before the Debtor filed for bankruptcy, FAY and the Debtor had entered into three long-term leases

-1-

whereby the Debtor rented three separate parking facilities from FAY. One facility is located at 14 East Cedar Street in Chicago, Illinois (the "Cedar Lease"). Another facility is located at 25 East Walton Street in Chicago, Illinois (the "Walton Lease"). The third facility is located at 3157 North Broadway in Chicago, Illinois (the "Broadway Lease"). The five transfers at issue were rent payments under these leases. (Stipulated Facts ¶ 6). According to the leases, the Debtor paid a flat payment for rental of each facility each month. The leases also require the Debtor to pay a certain percentage of his gross revenue as rent.

On February 22, 2005, this court entered an order (the "Assumption Order") authorizing the amendment and assumption of the Walton Lease under 11 U.S.C. § 365. In the Assumption Order, FAY agreed to "waive all prior defaults and claims under the lease (pre-petition and post-petition)...." (Plaintiff Ex. 5 ¶ 6).

On April 20, 2007, FAY filed a motion for summary judgment on the complaint. On July 26, 2007 this court granted partial summary judgment for FAY on Transfer #1, Transfer #3, and Transfer #4. On December 12, 2007, this court held a trial on the Trustee's complaint concerning Transfer #2 and Transfer #5. FAY raised two defenses concerning Transfer #2 and Transfer #5. First, FAY argued that these transfers could not be preferential transfers as a matter of law according to In re Superior Toy & Mfg. Co., Inc. because the Debtor assumed the Walton lease. 78 F.3d 1169 (7th Cir. 1996). In the alternative, FAY asserted the defense of ordinary course of business under 11 U.S.C. § 547(c)(2).

The parties have stipulated to certain facts regarding Transfer #2 and Transfer #5. Transfer #2 was a payment of rent on the Walton Lease for the month of October 2004, which FAY received on November 4, 2004. (Stipulated Facts ¶¶ 10 & 11). Transfer #2 was of an interest in property of the Debtor made on account of an antecedent debt. (Stipulated Facts ¶¶ 12 & 15). FAY was a creditor of the Debtor when FAY received Transfer #2 and Transfer #2 was to or for the benefit of a creditor. (Stipulated Facts ¶¶ 17 & 18).

Transfer #5 was payment of a percentage of the Debtor's gross revenues as rent under the Walton Lease for lease years ended June 30, 2003 and June 30, 2004. (Stipulated Facts ¶ 13). FAY received Transfer #5 on November 9, 2004. (Id.). Transfer #5 was an interest in property of the Debtor made on account of antecedent debts. (Stipulated Facts ¶ 14 & 15). Transfer #5 was to or for the benefit of FAY and FAY was a creditor of the Debtor when FAY received the transfers. (Stipulated Facts ¶ 16 & 17). FAY never charged the Debtor a late fee on any late rental payments. (Stipulated Facts ¶ 19).

At trial, the Trustee presented documentary evidence in support of his prima facie case. First, the Trustee offered the parties Joint Stipulation of Facts. He also offered FAY's responses to the Trustee's requests for admissions stating that FAY did not review any financial records of the Debtor regarding the Debtor's solvency in the three months before the Debtor filed for bankruptcy relief. (Plaintiff Ex. 11). Finally, the Trustee offered the Debtor's schedules, showing assets of $362,820 and liabilities of $3,459,203.88 as of the date the Debtor filed its bankruptcy petition. (Plaintiff Ex. 4).

FAY offered the testimony of two witnesses at trial. The first witness was Lillian Licheniak, the office manager of the law firm Grey, Grey & Baltz, P.C. The second witness was Nathaniel Grey, a partner of the law firm of Grey, Grey & Baltz, P.C. and the president of FAY.

Licheniak testified that she maintains the leases between FAY and the Debtor. She collects the rent checks sent from the Debtor and deposits them into FAY's account. She also keeps records of what date the checks were received, the amount of rent due and the date of the deposits. Licheniak prepared a summary of rental payments received from the Debtor. (Defendant Ex. 15). Licheniak testified that FAY received 31 rent payments from the Debtor in 2004. The Debtor did not make any of these payments when due. The payments ranged from fourteen to thirty-six days late. The latest payment was the July 2004 payment, which was first received on July 27, 2004 but the check bounced and FAY did not receive a new check until August 6, 2004. Licheniak stated that Transfer #2, thirty-four days late, was the only payment

received more than thirty days late except the July 2004 bounced check. Finally, Licheniak testified that no one ever instructed her to impose interest or a late fee on the Debtor's untimely payments.

Next, Nathaniel Grey testified. Grey testified that he has practiced law in the area of commercial real estate, regarding leasing, financing, and sales for twenty years. Grey estimates that he was involved in twenty to forty leases involving parking lots and over one hundred commercial leases generally. Grey has been the president of FAY since its owner died in 1999. Grey has no equitable ownership, however, in FAY or any of its entities. He explained that, although the leases with the Debtor provided for late fees and interest, he decided not to charge late fees to the Debtor because the Debtor's principal was hard-working and had a cash business. The rent was $50,000 per month so Grey understood when the Debtor tried to stagger the payments. Grey considered that the Debtor was a long-standing tenant who had made all of his payments in the past in deciding not to charge late fees.

Grey also testified about commercial leasing practices in general. Grey stated that credit tenants, who are large national or local businesses pay rent by the tenth day of the month. Non-credit tenants, on the other hand, are smaller entities. The payment habits of non-credit tenants vary widely. Some pay at the beginning of the month, others in the middle, and others at the end of the month. Some pay after the month is over. Grey stated that the Debtor is a non-credit tenant and that he found the Debtor's late payment habits to be consistent with other non-credit commercial tenants. Specifically, Grey stated Transfer #2 was within a reasonable range and within ordinary business terms. Grey attempted to testify as to his opinion on Transfer #5 being within the ordinary course of business. This court did not admit such testimony, however, because FAY did not discuss the ordinary course of business defense in its trial brief regarding Transfer #5. This court's pre-trial order stated that any legal argument not raised and discussed in the trial brief is deemed waived. Thus, FAY waived its ordinary course of business defense, if any, in relation to Transfer #5.

On cross examination, Grey insisted that there was no industry standard for parking lots. Rather, he stated that the industry standard relevant to this case is commercial leasing in general. In his deposition, Grey admitted that he did not know who FAY's competitors were. He also said that the majority of rent payments were less than twenty-three days late.

### Preference Claim

Section 547 provides as follows:
> (b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
> (A) on or within 90 days before the date of the filing of the petition;...
> (5) that enables such creditor to receive more than such creditor would receive if—
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

In this case, the parties stipulated that Transfer #2 and Transfer #5 were of an interest of the Debtor in property, to or for the benefit of FAY, for or on account of an antecedent debt, and made within 90 days before the date of the filing of the petition. Under § 547(f), a debtor is presumed insolvent during the 90 days before the filing of a debtor's bankruptcy petition. FAY has not offered any evidence to rebut the presumption that the Debtor was insolvent at the time of the transfers. Finally, the Trustee has offered the Debtor's schedules which show assets of $362,820 and liabilities of $3,459,203.88 as of the date of the petition. (Plaintiff Ex. 4). According to these figures, a general unsecured creditor like FAY would not receive 100% percent payment if the case was filed under chapter 7. Thus, the Trustee has proved all of the elements of a preferential transfer regarding Transfer #2 and Transfer #5.

## Ordinary Course of Business Defense

FAY first asserts a defense of ordinary course of business under § 547(c)(2). FAY must prove three elements to prove an ordinary course of business defense.[1] First, FAY must prove the transfer was in payment of a debt that was incurred by the debtor in the ordinary course of business. Matter of Tolona Pizza Products Corp., 3 F.3d 1029, 1031 (7th Cir. 1993). Second, FAY must prove the transfer was made in the ordinary course of business affairs of the debtor and the transferee. Id. Finally, FAY must prove that the transfer was made according to ordinary business terms. Id. To prove that a transfer was made according to ordinary business terms, FAY must provide evidence concerning the standards and practices of the industry that encompasses the Debtor and FAY's relationship. In re Midway Airlines, 1995 WL 331053 (N.D.Ill.1995).

The court finds that FAY cannot prove its ordinary course of business defense regarding Transfer #2. The court finds Grey inadequate as an expert witness concerning the industry standards of the parking lot industry. The Trustee could have brought a motion to disallow Grey's testimony as an expert because he did not testify about the parking lot industry or why there are no standards for the parking lot industry. Thus, the court finds that FAY has not proved that Transfer #2 was made according to ordinary business terms. Therefore, FAY's ordinary course of business defense fails.

## Debtor's Assumption of the Lease under § 365

Finally, FAY argues that the Debtor paid Transfer #2 and Transfer #5 pursuant to a lease that the Debtor amended and assumed post-petition and that, as a result, these transfers are not subject to avoidance according to Superior Toy. In Superior Toy, the debtor assumed a contract post-petition and cured all defaults under the contract as required by § 365. 78 F.3d at 1170. The trustee later sued the other party to the contract to recover the cure payments as preferential payments. Id. The Seventh Circuit held that the trustee could not bring a preference claim to recover a transfer made pursuant to a validly assumed executory contract. Id. at 1176.

---

[1] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 took effect after this case was filed and is therefore inapplicable.

The Trustee argues that <u>Superior Toy</u> is not applicable to this proceeding because in the Assumption Order, FAY agreed to waive all prior defaults and claims. (Plaintiff Ex. 5 ¶ 6). In the facts of <u>Superior Toy</u>, the debtor was required as part of the assumption to cure all defaults. Thus, the Trustee asserts that FAY implicitly waived the protection of <u>Superior Toy</u> against preference liability when FAY waived its right to cure payments for prior defaults.

This court declines to find an implicit waiver of an important right. The Assumption Order did not specifically state that FAY waived its right to retain preferential transfers. This court follows <u>Superior Toy</u> and finds that the Debtor cannot avoid as preferential Transfer #2 and Transfer #5 because they were paid pursuant to the assumed Walton Lease.

Judgment is entered for defendant F.A.Y. Properties, Inc. on the Trustee's complaint to avoid preferential transfers. This opinion constitutes findings of fact and conclusions of law. A separate judgment order consistent with the opinion will be entered.

**Dated: December 27, 2007**                    **ENTERED:**

*Jacqueline P. Cox* J.P.Cox
Jacqueline P. Cox
**United States Bankruptcy Judge**

-7-